UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| **ARTISTIC CARTON COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CAUSE NO.: 1:06-CV-316** |
| | ) | |
| **THELAMCO, INC., and** | ) | |
| **CASCADES CANADA, INC.,** | ) | |
| | ) | |
| **Defendants.** | | |

## OPINION AND ORDER

This matter is before the Court on Plaintiff Artistic Carton Company's Motion to Reduce Expert Witness Fees, pursuant to Federal Rule of Civil Procedure 26(b)(4)(C), filed May 22, 2008. (Docket # 89.) The Court gave thelamco, Inc.'s expert witness, Eldridge M. Mount III ("Mount"), an opportunity respond (Docket # 90), and he did so on June 10, 2008[1] (Docket # 94). Artistic subsequently replied (Docket # 95), and the matter is now ripe for consideration. For the following reasons, Artistic's motion (Docket # 89) will be GRANTED.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Artistic alleges various breach of contract and warranty claims against thelamco, arising from their contract for thelamco to provide laminating paperboard for use in Artistic's carton manufacture. (*See* Docket # 1.) On February 5, 2008, counsel for Artistic sent a subpoena for documents pursuant to Federal Rule of Civil Procedure 45 to Mount, thelamco's retained expert who had produced an expert report. (Pl.'s Mot. To Reduce Expert Witness Fees ("Pl.'s Mot.") Ex. A.) The subpoena requested that Mount produce the following: 1) any and all documents

---

[1]Mount prepared the response himself and counsel for thelamco agreed to electronically file it for him. (*See* Docket # 94.)

Mount reviewed, examined or relied upon in preparing for and drafting his report; 2) any and all communications between thelamco, Inc., its attorneys or representatives and Mount or his representatives in preparation of or in connection with his report; 3) all test results Mount used or relied on in connection with any request for services from thelamco, Inc., its attorneys or representatives; 4) any and all drafts of Mount's report; and 5) any and all notes written in preparation of or in connection with Mount's report.  (Pl.'s Mot. Ex. A.)

Mount apparently responded by producing 1,134 pages of original documents and 600 pages of duplicates and sent an invoice for his work.  (Pl.'s Mot. 2.)  The invoice purported to be in response to Artistic's February 5 subpoena, but the "Purpose" section stated that it was for "[c]onsulting on questions relating to Profile Extrusion."  Its charges totaled $4,274.35: $224.35 for "photocopy costs" and $4,050.00 for "Testimony Preparation (Expert Report) 15 hrs @ $270.00 per hour."  (Pl.'s Mot. Ex. B.)  Artistic then sent Mount a letter inquiring whether he confused his accounts, noting that the instant case does not involve profile extrusion and questioning the testimony preparation fees because he had not been deposed.

Mount then sent a new invoice to Artistic's counsel, charging the same total ($4,274.35) as the prior invoice.  It maintained the same charge for photocopy costs, and this time indicated that the $4,050.00 fee was for "Subpoena reply and document preparation 15 hrs @ $270.00 per hour."  (Pl.'s Mot. Ex. C.)  Artistic challenges these charges in the present motion.

Artistic invokes Federal Rule of Civil Procedure 26(b)(4)(C), pertaining to the payment of fees for experts responding to discovery requests, and essentially argues that Mount's $270 per hour expert fee is facially unreasonable for time spent on the clerical task of producing documents in connection with his expert report.  Artistic further questions the number of hours

2

Mount spent and contends that the discrepancies between the invoices indicates that his request is unreasonable.  Artistic ultimately requests that the Court reduce Mount's fees to the photocopy costs of $224.35 or any other rate the Court deems reasonable.  (Pl.'s Mot. 5.)

In turn, Mount asks the Court not to reduce his fees because the subpeona's instructions were "very specific and detailed[,]" requiring "a considerable amount of time to prepare[.]" (Resp. Br. 2.)  Mount explained that he attempted to contact Artistic's counsel regarding the timing and compensation for the discovery, but received no reply.  (Resp. Br. 3.)  He acknowledged that a "clerk could have physically reproduced the documents," but he "could not engage a document reproduction service on such short notice, and copied the documents [him]self."  (Resp. Br. 2.)  Mount contends that his expert rate of $270 is appropriate because he had to properly review the documents and "reply in a manner consistent with the preparation as written testimony[,]" and prepare "a detailed accounting and description of the documents." (Resp. Br. 4.)  He estimated that he spent two to three hours copying and delivering the documents, and added that should the court determine that the production of documents "does not reach the level of sworn testimony[,]" then the fees should be reduced to his "office time" rate of $220 consistent with his fee schedule.  He noted that he does his own secretarial and accounting work, and attributed the mistakes in the first invoice to having used an existing invoice as a template for his invoice in this case.  (Resp. Br. 2, 4.)

Artistic, in turn, replied that it never instructed Mount to personally review the documents, and that Mount only ever inquired about the subpoena's deadline – not his duties with respect to compliance with the subpoena.  (Reply Br. 2.)

3

## II.  DISCUSSION

Rule 26(b)(4)(C) provides, in pertinent part: "Unless manifest injustice would result, the court must require that the party seeking discovery . . . pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (B) . . . . "  Fed. R. Civ. P. 26(b)(4)(C).  Artistic does not argue that it would be manifestly unjust to assess fees here, but contends that Mount's preparation amounted to mere administrative tasks, such as copying and assembling documents, that either should not be compensated at all, or at a rate consistent with clerical (rather than expert) work.[2]

"There must be some reasonable relationship between the services rendered and the remuneration to which an expert is entitled."  *Dominguez v. Syntex Labs., Inc*., 149 F.R.D. 166, 167 (S.D. Ind. 1993) (internal quotation marks and citation omitted).  The reasonableness of such fees is assessed considering the following factors: "(1) the witness's area of expertise; (2) the education and training that is required to provide the expert insight which is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality and complexity of the discovery responses provided; (5) the fee actually being charged to the party who retained the expert; (6) fees traditionally charged by the expert on related matters; and (7)

---

[2] Indeed, imposing fees in this instance would not be manifestly unjust in any event.  In determining whether imposing fees under Rule 26 would be manifestly unjust, courts have drawn upon the analysis of Rule 16's analogous context, which requires "weighing the possible hardships imposed on the respective parties … [and] balancing the need for doing justice on the merits between the parties … against the need for maintaining orderly and efficient procedural arrangements."  *Fisher-Price, Inc. v. Safety 1st, Inc.*, 217 F.R.D. 329, 332 (D. Del. 2003) (internal quotation mark and citation omitted).  Here, as in *Fisher-Price*, "it is routine, and only fair, that the party requesting certain information should bear the costs associated with producing such information."  *Id*.  "This comports with the purpose of Rule 26(b)(4)(C) which is 'to avoid the unfairness of requiring one party to provide expensive discovery for another party's benefit without reimbursement.'" *Id*. (citing *United States v. City of Twin Falls, Idaho*, 806 F.2d 862, 879 (9th Cir. 1986); 4 J. Moore, J. Lucas, & G. Grotheer, Jr., *Moore's Federal Practice* ¶ 26.66[5] (2d ed. 1984)).  Here, there is no suggestion that anyone is receiving a windfall from Artistic's discovery request.  Furthermore, Mount apparently worked quickly and diligently to submit a timely reply to the subpoena's deadline of February 19, which allotted only two weeks for him to respond.  (*See* Resp. Br. 2.)

4

any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26." *Id.* (citing *Jochims v. Isuzu Motors, Ltd.*, 141 F.R.D. 493, 495 (S.D. Iowa 1992) (internal quotation marks omitted); *see also Profile Prods., LLC v. Soil Mgmt. Tech., Inc.*, 155 F. Supp. 2d 880, 886 (N.D. Ill. 2001).

Neither side here has provided the Court with much information touching on these factors. However, in examining what we know of the nature, quality, and complexity of the discovery responses, we find that awarding *some* fees for Mount's efforts in complying with the subpoena is reasonable. He did, after all, respond to a discovery request, apparently producing over a thousand pages of documents and meticulously cataloging them pursuant to the subpoena's instructions. *See* 6 *Moore's Federal Practice* § 26.80 (3d ed. 2004) ("Unless manifest injustice would result, the court will require the party seeking discovery to pay the expert a reasonable fee for the time spent in responding to any discovery demands. This includes time spent responding to subpoenas seeking documents as well as time spent on depositions."); *Fisher-Price, Inc.*, 217 F.R.D. at 331-332 (holding that an expert's response to a subpoena under Rule 45 fell into the ambit of Rule 26(b), and awarding fees for labor entailed in producing documents); *see also Profile Prods.*, 155 F. Supp. 2d at 886 ("The Rule calls for compensation for 'time spent in responding to discovery,' and not just time spent at the deposition.").

Artistic argues, however, that Mount is entitled to no fees beyond the photocopy charge because the task of reproducing the documents was both simple and clerical in nature. However, the case law it cites for the contention that no fees should be awarded is distinguishable. In *Rosenblum v. Warner & Sons, Inc.*, 148 F.R.D. 237, 241 (N.D. Ind. 1993), for example, the

5

Court denied fees of $97.50 for an hour and a half spent copying a videotape and duplicating some photographs, where the expert merely used the local drugstore to duplicate the photographs and the opposing party offered to copy the video itself.  In contrast, Mount's organizing and assembling the plethora of materials was much more involved than duplicating a videotape and some photographs, and consequently he should be reimbursed for the time he spent performing those more tedious tasks.

Artistic also cites to *Packer v. SN Servicing Corp.*, 243 F.R.D. 39, 44 (D. Conn. 2007), stating that "the court held that while an expert's time for deposition, or deposition preparation is compensable, the expert's time collecting documents to respond to the opposing party's subpoena is not a reasonable cost for reimbursement."  (Pl.'s Br. 4.)  However, Artistic omits an important aspect of *Packer*'s holding.  The court actually held that "the time spent collecting documents *within the scope of documents required to be produced pursuant to Fed. R. Civ. P. 26(a)(2)(B)* in connection with an expert's report should not be compensated."  *Id*. at 43-44.  And here, Artistic is not arguing that Mount was responding to a subpoena merely for documents that should have already been produced under Rule 26(a)(2).  Furthermore, some of the materials the subpoena requested, such as communications between Mount and thelamco, may go beyond the scope of Rule 26(a)(2)(B)'s expert testimony disclosure requirements.

Therefore, this dispute is ultimately about whether or not Mount is entitled to charge his expert hourly rate for the essentially clerical tasks involved in producing documents.  Mount argues that he is entitled to his expert hourly rate of $270.00 because he took great care in preparing the documents, believing them to be the equivalent of testimony.  However, we agree with Artistic that producing the materials was an administrative task not demanding expert

6

performance.  As noted *supra*, there must be a reasonable relationship between the service rendered, *i.e.*, assembling documents, and the fee.  *Dominguez*, 149 F.R.D. at 167.  While he may have done the work himself (whether because he has no clerical staff or because he thought assembling the documents was a complicated feat), he essentially compiled, copied, and cataloged various materials, tasks which do not require *expert* knowledge.  In fact, Mount himself acknowledged that "[w]hile a clerk could have physically reproduced the documents, [due] to the short timing I could not engage a document reproduction service on such short notice, and copied the documents myself."  (Resp. Br. 2.)  Therefore, we find Mount's request for $270 per hour to conduct the clerical work of assembling and physically copying materials for the subpoena facially unreasonable.

Mount also submits that if the expert fee is inappropriate the Court should instead charge his "Office Rate" of $220.00, as set forth in his fee schedule.  (*See* Resp. Br. 4, Ex. D.)  Although we recognize that Mount responded to the subpoena himself and that he has a special rate for the performance of office work, Artistic should not have to pay extra for Mount's personal decision to perform the tasks instead of a clerk who could have done them for considerably less.  In other words, the Court will not impose an hourly fee of $220.00 simply because this expert does not have a clerical staff to do it for him.  *See, e.g., Dominguez*, 149 F.R.D. at 170-71 (holding that expert's hourly fee of $460.00 for production of documents was unreasonable, where the expert assembled and reviewed the materials himself, and finding the reasonable hourly fee to be whatever the expert pays his clerical staff).

Therefore, we must now determine an appropriate fee consistent with the clerical work involved.  In *Fisher-Price*, the court imposed an hourly fee of $50.00 for the administrative tasks

7

in producing documents to comply with a discovery request.  *Fisher-Price*, 217 F.R.D. at 334.  In the analogous context of a paralegal filing and serving court papers, courts have awarded fees at the lower hourly rates of $25.00 and $30.00.  *See, e.g., Taylor v. Barnhart*, No. 00 C 7782, 2002 WL 31654944, at *4 (N.D. Ill. Nov. 22, 2002); *Pawell v. Metro. Pier & Exposition Auth.*, No. 03 C 3158, 2005 WL 1902116, at *9 (N.D. Ill. March 4, 2005).  Mount did more here than merely file documents; he also gathered them and prepared a list responsive to each of the discovery requests.  Thus, we find the $50.00 hourly rate more appropriate.

Mount states that it took him two to three hours to copy the documents and twelve to thirteen hours to organize them according to the subpoena's instructions.  As previously discussed, Mount produced over a thousand pages of material, including reports, emails, and forms and data sheets, and composed detailed lists for each discovery request in an effort to comply with the subpoena.  Although he apparently did not have to search for the materials, having used them recently in creating his expert report, we accept that collating and re-organizing that amount of material could conceivably take twelve to thirteen hours.[3]  Fifteen hours multiplied by the clerical rate of $50.00 an hour amounts to $750.00.  Artistic does not dispute the copying costs of $224.34.  The total fee, therefore, comes to $974.34.  This sum bears a more reasonable relationship to the type of work Mount performed in responding to the subpoena than the $4,274.35 Mount is attempting to charge.  *See Dominguez*, 149 F.R.D. at 167.

In sum, absent a finding of manifest injustice, this Court is compelled to award Mount a reasonable fee for his discovery response.  *See* Fed. R. Civ. P. 26(b)(4)(C).  For the reasons

---

[3]Mount's explanation for the mistake in the first invoice, that it was the result of using a prior invoice as a template, is plausible and we will accept it as true.

articulated herein, we find that the hourly rate of $50.00 is a reasonable fee for the clerical work Mount performed in responding to the Artistic's subpoena.

### III.  CONCLUSION

Accordingly, Artistic Carton Company's Motion to Reduce Expert Fees is GRANTED. (Docket # 89.)  Artistic shall compensate Mount in the sum of nine hundred and seventy-four dollars and thirty four cents ($974.34).

SO ORDERED.

Enter for June 30, 2008.

S/Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge
