UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| ARTISTIC CARTON COMPANY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No.: 1:06-CV-316-TS |
| | ) | |
| THELAMCO, INC., and CASCADES CANADA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

On September 14, 2006, the Plaintiff, Artistic Carton Company ("Artistic"), submitted its Complaint [DE 1] alleging that Defendant thelamco, Inc. ("thelamco") is liable for breach of contract and breach of warranty based on a transaction involving laminated paperboard. After a period of discovery, the Plaintiff submitted its Amended Complaint [DE 49] on September 5, 2007, adding Cascades Canada, Inc. ("Cascades") as a Defendant. As to Cascades, the Plaintiff claims breach of contract (Count I), breach of express warranty (Count II), breach of implied warranties of merchantability (Count III), and breach of implied warranty of fitness for a particular purpose (Count IV). Cascades filed its Answer on January 17, 2008.

**PROCEDURAL BACKGROUND**

On January 23, 2009, Cascades filed its Motion for Summary Judgment [DE 109], arguing that: (1) Artistic's acceptance and continued use of the goods in question preclude the breach of contract claim; (2) Artistic's failure to give adequate notice precludes the breach of warranty claims; (3) Artistic's independent testing and approval of the goods in question, and Cascades' reliance on the same, preclude its breach of warranty claims. The Plaintiff filed its

Response on February 26, 2009. The Defendant filed its Reply on April 1, 2009, and the Motion for Summary Judgment is ripe for ruling.

**SUMMARY JUDGMENT STANDARD**

The Federal Rules of Civil Procedure provide that motions for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *AA Sales & Assocs. v. Coni-Seal, Inc.*, 550 F.3d 605, 608–09 (7th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). Under Rule 56(e)(2), a party opposing a properly made and supported motion for summary judgment "may not rely merely on allegations or denials in its own pleading; rather its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." If appropriate, summary judgment should be entered against a party who fails to so respond. Fed. R. Civ. P. 56(e)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (holding that a court should enter summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). A court's role on summary judgment is not to weigh the evidence, make credibility determinations, or decide which inferences to draw from the facts, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 255; *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007); *Payne v. Pauley*,

337 F.3d 767, 770 (7th Cir. 2003). Thus, a court in ruling on a summary judgment motion construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *AA Sales & Assocs.*, 550 F.3d at 609. However, the court is not required to draw every conceivable inference from the record—only reasonable ones. *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir. 1989).

**FACTS**

Viewing the facts in the light most favorable to the Plaintiff, the Court finds the following facts.

Artistic is a manufacturer of folding cartons. Cascades produces paperboard that can be made into folding cartons. In the fall of 2005, Artistic's primary customer was a high-end retailer. For this customer, Artistic required whiteback, double-coated, recyclable-content board that was capable of being laminated. Artistic was contacted by Todd Galiza ("Galiza"), a Cascades sales representative, who explained that Cascades' paperboard, named "Arctikoat," met these qualifications.

Finding Arctikoat's "styling and smoothness" satisfactory, Artistic engaged Cascades in subsequent discussions. In these discussions, Artistic told Cascades that it would require bacteria and acid testing for the paperboard. Cascades represented to Artistic that Arctikoat was comparable to the "White Pigeon" paperboard that Artistic had used in the past. Cascades further explained its manufacturing process, the dimensions of its paperboard, and the way that the Arctikoat might react to the laminating procedures used by thelamco, the company charged with laminating Cascades' paperboard.

3

Cascades represented that its paperboard was suitable for lamination, specifically the type of foil lamination used by thelamco. Artistic eventually asked Cascades for a sample of Arctikoat to test whether the paperboard could be foil laminated. A Cascades representative was not present at the testing, due to Artistic's confidentiality agreement with its high-end retailer. After a successful trial run, Artistic entered into an agreement with Cascades, whereby Cascades was to ship the Arctikoat paperboard directly to thelamco, which would then foil laminate the paperboard, and send it to Artistic, which would in turn make its folding cartons.

In July, 2006, the operation was foiled, or perhaps unfoiled—Artistic noticed that the laminate was coming off of the Arctikoat. Upon learning of the problem, Artistic's representative Dawn Tischhauser ("Tischhauser") called Galiza, informing him of the problem. Galiza told Tischhauser that he would contact thelamco and look into the problem. Galiza contacted fellow Cascades employees, informing one of them that Cascades "may have a problem," Galiza Dep. 457, Aug. 29, 2008, and that Cascades "had to start the investigation or at least looking at what was going on, try to get an understanding." *Id.*

thelamco maintained that the problem was not with its laminating, but with the Arctikoat paperboard. As a result, Tischhauser requested that Cascades test the paperboard. Tischhauser delivered samples of the delaminated board to Galiza, who sent them on to Cascades' mill in Toronto, Ontario. Cascades determined that "[t]he encountered problem is not related to the [Arctikoat paperboard] itself." Vachon Dep. 410–13, Aug. 27, 2008. This conclusion was relayed to Artistic on August 17, 2006. Cascades and thelamco then had a conference call to review each other's finding. Each blamed defects in the other's product for the delamination.

By August 2006, this ongoing issue had caused Artistic's production schedule to become

4

unglued. Artistic was forced to hire a temporary summer workforce of 125 college students to complete the order for its primary customer. Artistic sent the remainder of the paperboard rolls to a second laminator, FLI, hoping that the rolls could be laminated, even if defective. (FLI uses a different laminating technique than thelamco). FLI was able to successfully laminate the Arctikoat, and Artistic attempted to get replacement stock from Cascades. Cascades refused to ship any more paperboard to Artistic until Artistic signed a release of liability and payment guarantee. Artistic refused to sign a release of liability, but did guarantee payment. Cascades then shipped additional paperboard, and Artistic completed its customer's order.

On September 6, 2006, Galiza sent an email to colleagues at Cascades stating: "All: Please review and file for your records <u>we will need this latter</u> [sic]!" Galiza Dep. 30 (emphasis in original). Galiza instructed Cascades' attorney to "start a file . . . as we have a claim that may or may not come to fruition." *Id.* On September 14, 2006, Artistic filed this lawsuit against thelamco. Eight months later, thelamco submitted to Artistic the "Expert Report of Eldridge M. Mount III." Mount's summary indicated that contaminants within Arctikoat, rather than thelamco's lamination techniques, caused the delamination. As noted above, Artistic then moved successfully to add Cascades as a defendant.

## DISCUSSION

The Plaintiff's Amended Complaint sought relief on grounds of breach of contract, as well as several breaches of warranty. However, in its Response to the Defendant's Motion for Summary Judgment [DE 133], the Plaintiff stated that "Artistic concedes that it did not reject the

Cascades paper, nor did it revoke its acceptance. As such, it is not seeking damages based on such a revocation or rejection." The Court will thus grant Summary Judgment on Count I—the breach of contract claim. The remaining issues are all breach of warranty claims. Count II alleges a breach of express warranties, Count III alleges a breach of implied warranties of merchantability, and Count IV a breach of the implied warranty of fitness for a particular purpose. The Defendant moves for summary judgment on the theories that: (1) *all* of the breach of warranty claims are barred for failure to give adequate notice; (2) the breach of express warranty claim fails because of Artistic's knowledge and independent testing of Arctikoat; (3) the implied warranty of merchantability claim fails because Artistic waived its right to bring the claim; and (4) the breach of implied warranty of fitness for a particular purpose claim fails because Cascades had no knowledge of the particular purpose for which the Arctikoat would be used. Because the first argument, if successful, would result in a total dismissal of Cascades, the Court will address it first, and then turn to the arguments regarding the individual counts.

### A.  Notice Under Indiana Code § 26-1-2-607

In rebutting the Plaintiff's breach of warranty claims, the Defendant points to Indiana Code § 26-1-2-607. In pertinent part, the section states, "Where a tender has been accepted: the buyer must, within a reasonable time after he discovers or should have discovered any breach, notify the seller of the breach or be barred from any remedy . . . ." Ind. Code § 26-1-2-607(3)(a).

The content of the notification "need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched." *Id.*, cmt. 4. In other words, sufficient notice requires "notice of the factual circumstances sufficient for the seller to determine that the

buyer has ground for a claim of breach." *Paper Mfr.'s Co. v. Rescuers, Inc.*, 60 F.Supp.2d 869 (N.D. Ind. 1999) (citing Ind. Code Ann. § 26-1-2-607(3)(a)). When the buyer is a merchant, it is held to a higher standard of dealing requiring earlier and more sufficient notice of breach. *See Courtesy Enter., Inc. v. Richards Lab.*, 457 N.E.2d 572, 578 (Ind. Ct. App. 1983) (citing § 2-607, cmt. 4).

What is a "reasonable time," as agreed by both parties, is ordinarily a question of fact, not appropriate for summary ruling. Only when the time for notice is exceptionally long may the question become one of law. *Id.* at 578–79. ("What is a reasonable time depends upon the particular circumstances . . . . [However,] the period may be so long as to become a question of law."); *Adler v. United States ex rel. Gen. Tire & Rubber Co.*, 270 F.2d 715, 719 (8th Cir. 1959) ("We recognize the question of the sufficiency of the notice ordinarily presents a factual issue, properly to be determined by a jury; however, where all of the evidence is such as to compel reasonable men to reach only one conclusion, the question is one of law.") (citing *Vander Eyk v. Bones*, 91 N.W.2d 897 (S.D. 1958)); *N. States Power Co. v. ITT Meyer Indus.*, 777 F.2d 405, 408 (8th Cir. 1985) ("Where more than one inference may be drawn from undisputed facts, or where the facts are disputed, the sufficiency of notice of a breach of warranty is a question properly submitted to a jury.").

Thus, in order to merit summary judgment on the notice issue, the Defendant must meet the exceedingly high standard of proving the notice so tardy as to make all reasonable observers conclude that the timing was unreasonable as a matter of law, or so vague as to not have notified Cascades of Artistic's potential cause of action. Cascades does not meet this standard. The Court notes that the parties vigorously dispute both the timing and the sufficiency of the given notice

regarding alleged defects in the Artikoat. But considering the evidence before the Court, including evidence that Cascades was given notice of the delamination problem shortly after Artistic learned about it, and that Cascades engaged in a form of internal investigation, and obtained two expert opinions on the viability of Arctikoat, and that Cascades employees had notice of supposed defects shortly after discovered, the Court finds that a genuine issue of material fact exists as to the timing and sufficiency of the notice, and that it is not rightly considered a matter of law. The Court will therefore deny the Defendant's request on this claim.

**B.     Count II—Breach of Express Warranty Under Indiana Code § 26-1-2-313**

Cascades next argues that it did not make an express warranty of the sort Artistic alleges, thus precluding a breach of express warranty claim as a matter of law. Indiana Code § 26-1-2-313 states:

> (1) Express warranties by the seller are created as follows:
>    (a) any affirmation of fact or promise by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>    (b) any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>    (c) any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
>
> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

Ind. Code § 26-1-2-313. "The decisive test for whether a given representation is a warranty or merely an expression of the seller's opinion is whether the seller asserts a fact of which the buyer is ignorant or merely states an opinion or judgment on a matter of which the seller has no special

knowledge and on which the buyer may be expected to have an opinion and exercise his judgment." *Royal Bus. Mach.*, *Inc. v. Lorrain Corp.*, 633 F.2d 34, 41 (7th Cir. 1980).

The Defendant's Motion for Summary Judgment addresses only sections 1(a) and 1(b) of the statute. It argues that no warranty was made as to the viability of Arctikoat. However, as the Plaintiff rightly notes, an express warranty can also be created by sample or model. In this case, the Plaintiff has come forward with evidence that can reasonably be read to suggest that the Arctikoat sample originally provided by Cascades contained no contaminants that would prevent foil lamination, and that the Arctikoat product utilized by Cascades did contain the contaminants. Artistic had no problem laminating the sample Arctikoat supplied by Cascades, yet the Arctikoat that it later received pursuant to the agreement could not be laminated successfully by thelamco. Further, expert testimony put forward by the Plaintiff supports that the final Arctikoat product did contain contaminants. While a deviation between the sample and the product is not the *only* possible inference that can be drawn from these facts, the Plaintiff has met its burden of showing a genuine issue of triable fact.

Additionally, Cascades moves for summary judgment here on the grounds that even if there was a warranty made by sample, there was no breach. On this, Cascades argues only facts, rather than citing legal precedent that would entitle it to summary judgment as a matter of law. While its arguments as to Arctikoat's successful lamination in the sample run, and Arctikoat's successful lamination by FLI are not uncompelling, their credibility is best left to a finder of fact to determine. Because Artistic has come forward with evidence tending to show facts that Cascades has breached its express warranty created by sample, the Court will deny granting summary judgment on this claim.

## C. Count III—Breach of Implied Warranty of Merchantability Under Indiana Code § 2-314

On Count III, Cascades contends that it is entitled to summary judgment because Artistic has waived its right to bring the claim. Section 2-314 of the Indiana Commercial Code states, "Unless excluded or modified (IC 26-1-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Ind. Code. § 26-1-2-314(1).

An implied warranty of merchantability deals with the fitness of goods for the ordinary, customary purposes for which the goods are used. *Frantz v. Cantress*, 711 N.E.2d 856, 859 (Ind. Ct. App. 1999). The term "merchantable" implies that the goods sold will conform to ordinary standards and be of the same average grade, quality, and value as similar goods sold under similar circumstances. *Id.*

However, the implied warranty of merchantability can be preemptively waived by inspection. Paragraphs 2-316(3)(b) and (c) provide:

> (b) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and
>
> (c) an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade . . . .

Ind. Code § 26-1-2-316(b), (c). If the buyer has made an examination that should have disclosed the defects that later give rise to a suit, § 2-316 precludes a claim for implied warranty of merchantability. *Richards v. Goerg Boat & Motors, Inc.*, 384 N.E.2d 1084, 1093–94 (Ind. Ct. App. 1979). Therefore, latent defects are *not* precluded by the statute. *Id.* At 1094. "[Breach of the implied warranty of merchantability] will not be excluded by a simple type of examination nor will those defects which would require an unusual examination obviously beyond the

capabilities of the buyer." *Id.*

In this case, Cascades contends that the two parties' course of dealing, specifically the fact that Artistic, thelamco, and FLI all performed extensive testing on the Arctikoat, bars Artistic from now making this claim. However, this misses the gist of Artistic's argument, which is that the product it bought from Cascades contained contaminants that were *not present* in the sample. As detailed above, Artistic has shown that genuine issues exist as to whether the sample varied from the delivered product. Therefore, discovering the defects would have been "obviously beyond the capabilities of the buyer." As such, the Court will deny the Defendant's request for summary judgment on this claim.

**D.     Count IV—Breach of Implied Warranty of Fitness for a Particular Purpose Under Indiana Code § 2-315**

Finally, Cascades argues that it should be granted summary judgment on Count IV of the Complaint. It argues that because it had no knowledge of the particular purpose for which Arctikoat would be used, it cannot be liable for breaching a warranty for the particular purpose. Section 2-315 states, in pertinent part:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is, unless excluded or modified under IC 2-1-2-316, an implied warranty that the goods shall be fit for such purpose.

Ind. Code § 26-1-2-315. An implied warranty of fitness for a particular purpose attaches only when the seller, at the time of contracting, knows of the particular purpose for which the goods will be used. *Kovach v. Alpharma, Inc.,* 890 N.E.2d 55, 70 (Ind. Ct. App. 2008) (citing *Pizel v.*

*Monaca Coach Corp.*, 364 F.Supp.2d 790, 793 (N.D. Ind. 2005)). Additionally, the purchaser must have actually relied on the seller's specialized knowledge in selecting the good for its particular purpose. *Id.*

To withstand the Defendant's Motion for Summary Judgment on this claim, Cascades must show genuine issues of triable fact as to whether: (1) Cascades had reason to know of Artistic's particular purpose; (2) Cascades had reason to know that Artistic was relying on Cascades' skill or judgment to buy the right kind of paperboard; and (3) Artistic in fact relied on Cascades' skill or judgment. The Court finds that Artistic has shown triable issues on this claim. First, Artistic has provided the Court with evidence that would suggest Cascades knew of the particular purpose. Before the transaction, the two parties discussed paperboard specifications (whiteback, double-coated, recyclable-content board to be laminated for a special project), the appropriate testing (bacteria and acid testing), and the manufacturing process (thelamco would laminate the board, the board would be converted at Artistic, and Artistic would print on the board, die it, and glue it into cartons for its high-end retailer). Significantly, the parties discussed in depth the lamination process used by thelamco. Since the product broke down during the thelamco lamination, the Court determines for the purpose of summary judgment that Cascades may have known of Artistic's particular purpose. Second, Cascades had reason to know that Artistic was relying on Cascades' skill and judgment. Again, evidence of the exhaustive negotiations conducted by the parties before the transaction suggests that Cascade knew that Artistic was looking for a very specific paperboard for a very specific job.

Third, evidence before the Court suggests that Artistic in fact relied on the representations. Here, Cascades argues that since Artistic was in a better position to know if the

Arctikoat was suitable for application (as Artistic refused to allow Cascades' representatives to be present at the testing), Artistic could not have relied upon any representation from Cascades. Again, Cascades' argument fails to take into account the lynchpin of Artistic's case: that the sample of Arctikoat was different than the Arctikoat it ultimately received. There is evidence in the record showing that the representation that Arctikoat was well-suited for foil lamination was a factor in Artistic deciding to purchase it. Accordingly, genuine issues of triable fact exist as to this claim, and the Court will therefore deny summary judgment.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART the Defendant's Motion for Summary Judgment [DE 109]. Summary judgment is entered on the Plaintiff's breach of contract claim against the Defendant Cascades Canada, Inc., but is denied on all other claims by the Plaintiff against the Defendant.

SO ORDERED on September 22, 2009

 s/ Theresa L. Springmann  
THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT